## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-24010-JLK/Becerra

DANIELLE NOTTAGE,
on behalf of J.L.N., a minor,

     Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT[2]

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. Plaintiff Danielle Nottage ("Plaintiff" or "Nottage") filed her Motion for Summary Judgment on July 15, 2021, on behalf of her minor son J.L.N. ("Plaintiff's Motion"). ECF No. [21]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed her Motion for Summary Judgment with Supporting Memorandum of Law on August 16, 2021 ("Defendant's Motion"), arguing that the correct legal standards were applied and the Administrative Law Judge's (the "ALJ") decision is supported by substantial evidence. ECF Nos. [22], [23].[3] Plaintiff

---

[1] Although the case style originally listed Andrew Saul as Defendant, Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] On September 30, 2020, this matter was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [2].

[3] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [23], it is the same document as Defendant's Motion, ECF No. [22].

filed a Reply to Defendant's Motion (the "Reply") on August 30, 2021.  ECF Nos. [24], [25].[4]
The Court must now determine whether the decision reached by the Administrative Law Judge
("ALJ") is supported by substantial evidence and whether the correct legal standards were applied.
After a review of the Motions, the record, and all relevant authorities, the undersigned hereby
**RECOMMENDS** that Plaintiff's Motion be **GRANTED**, and Defendant's Motion be **DENIED**.

## I.     BACKGROUND

On November 6, 2017, Plaintiff applied for supplemental security income ("SSI") benefits
on behalf of J.L.N.  R. at 226. [5]  Plaintiff filed the application, alleging J.L.N.'s disability onset
date of November 6, 2017.  *Id.*  J.L.N. was born on July 26, 2009 and was a school-age child at
the time the application was filed.  *Id.* at 26.  The Social Security Administration ("SSA") initially
denied Plaintiff's claims on January 24, 2018, and denied them again upon reconsideration on July
20, 2018.  *Id.* at 23, 83, 86, 96, 99.  Thereafter, Plaintiff requested a hearing, which was held on
September 20, 2019, in Miami, Florida (the "Hearing").  *Id.* at 42.  J.L.N. and Nottage were the
only two individuals that testified at the Hearing.  *Id.* at 43.

On November 14, 2019, the ALJ denied Plaintiff's application.  *Id.* at 36.  Thereafter,
Plaintiff requested a review of the ALJ's decision.  *Id.* at 6.  On July 31, 2020, Plaintiff's request
for review of the ALJ's decision was denied by the Appeals Council.  *Id.*  Having exhausted all
available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant
action.  ECF No. [1].

---

[4] Although the Docket reflects that Plaintiff filed a separate Reply, ECF No. [24], it is the same
document as Plaintiff's Response, ECF No. [25].

[5] References herein to "R. at __" are to the Social Security transcript, the pertinent parts of which
can be found at ECF No. [17].  All the page numbers to the transcript referenced herein refer to
those assigned by the Court's electronic docketing system as found on the top right corner of the
page.

### A.  The SSA Hearing

J.L.N. was ten years old at the time of the Hearing.  *See id.* at 42, 26.  The Hearing centered upon J.L.N.'s attention deficit hyperactivity disorder ("ADHD"), and consisted of J.L.N.'s testimony, followed by Nottage's testimony.  *See id.* at 42–75.  In relevant part, J.L.N testified that he is one of four siblings—his five-year-old sister, his twelve-year-old sister, and his fifteen-year-old brother.  *Id.* at 58–59.  J.L.N. attends Coconut Palm Academy K-8 and he has repeated the third grade twice.  *Id.* at 50.  J.L.N. testified that he usually gets up at 6:00 a.m. for school and that he does not require assistance to bathe himself, dress himself, or feed himself.  *Id.* at 60.  J.L.N. also claims that he is "[g]ood" at finishing his classwork and "[s]o-so" at finishing his homework. *Id.* at 51.

With respect to household chores, J.L.N. testified that he is tasked with taking out the garbage, cleaning the dishes, and cleaning his room.  *Id.*  There are times when J.L.N. refuses to do certain things such as clean his room.  *Id.* at 52–53.  J.L.N. testified that he refused to clean his room because he "barely mess[ed] it up."  *Id.* at 53.  J.L.N. also testified that he gets frustrated at times.  *Id.* at 53.  He testified that he last became frustrated when he was playing a video game and it "glitched," causing him "to quit the whole game."  *Id.*  J.L.N. also testified that he sometimes gets frustrated at school.  *Id.* at 56.  He explained that he became frustrated when he "got in trouble from another teacher" when he mistakenly followed the wrong class out of the school after getting his breakfast.  *Id.* at 57–58.  With respect to recreational activities, J.L.N. testified that he likes to play video games.  *Id.* at 58.  He usually plays for about one hour before his twelve-year-old sister takes it away from him.  *Id.*  Aside from his activities in his P.E. class, he testified that he does not do much of any outdoor activities.  *Id.* at 60–61.  J.L.N. also testified that he takes medication every day but that he does not know why he takes the medication.  *Id.* at 61.

Nottage then testified. *Id.* Nottage testified that J.L.N.'s testimony was not entirely accurate. *Id.* at 62. Specifically, Nottage testified that J.L.N.'s teacher frequently calls her about his behavior. *Id.* Nottage testified that J.L.N. talks excessively in class and must be redirected to do his classwork and homework. *Id.* Nottage also testified that J.L.N. is currently enrolled in regular classes, and that for the past three years she has been trying to obtain an Individualized Education Program for him. *Id.* at 62–63. Nottage testified that J.L.N. receives tutoring now, but she had not signed him up in the previous year when he was struggling at school because she was homeless at the time. *Id.* at 63. During that time, J.L.N. lived with her at a shelter. *Id.* Also during that time, J.L.N. was attending an after-school program twice a week, where a counselor would come. *Id.* Nottage testified that she did not think the homelessness affected his focus in school, because "he still had help" at that time and "[h]is attention span is very short." *Id.* at 64. As to his medication, Nottage testified that she gives J.L.N. medication for ADHD, to help him calm down. *Id.* at 65. She testified that J.L.N. gets frustrated and has outbursts at times. *Id.* at 71.

**B.  Statutory and Regulatory Framework**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).

All claimants in social security cases, including those under the age of eighteen, bear the burden of proof.  *See id.* § 423(d)(5)(A); 20 C.F.R. § 416.912(a), (c).  A claimant under the age of

eighteen is disabled if he has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Act has established a three-step sequential evaluation process to determine whether a claimant under the age of eighteen is disabled. 20 C.F.R. § 416.924(a); *see also Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999). First, if a child is engaged in substantial gainful activity, he is not disabled. 20 C.F.R. § 416.924(a). Substantial activity "involves doing significant physical or mental activities," while gainful activity refers to "the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(a), (b); *see id.* §§ 416.971–416.976. However, "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs" are not considered substantial gainful activity. 20 C.F.R. § 416.972(c).

Second, the child must have a medically determinable impairment or combination of impairments that is severe. *Id.* § 416.924(a). The ALJ will not consider an impairment to be severe if it "is a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." *Id.* § 416.924(c).

Finally, the child must have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*; *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 918 (11th Cir. 2014) (setting forth the childhood disability standard). If the child is not working and has a severe impairment, the ALJ must evaluate whether the child's impairment meets or medically equals an impairment in the listings. 20 C.F.R. § 416.924(a)–(d). If the child's impairment does not meet or medically equal

a listed impairment, the ALJ must determine if the impairment is functionally equivalent to the listings. *Id.* §§ 416.924(d), 416.926a. A child's impairment functionally equals the listings if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A marked limitation "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). An extreme limitation "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

When the ALJ is considering functional equivalence, she "look[s] at how appropriately, effectively, and independently [the claimant] perform[s] [the] activities compared to the performance of other children [the claimant's] age who do not have impairment." *Id.* § 416.926a(b). The ALJ "will assess the interactive and cumulative effects of all of the impairments for which [she has] evidence, including any impairments [the claimant] [has] that are not 'severe.'" *Id.* § 416.926a(a). The ALJ "will consider all the relevant information in [the] case record that helps [them] determine [the claimant's] functioning, including [his] signs, symptoms, and laboratory findings, the descriptions . . . from [the claimant's] parents, teachers, and other people who know [him], and the relevant factors explained in §§ 416.924a, 416.924b, and 416.929." *Id.* § 416.926(e)(1)(i). This includes medical and nonmedical sources. *Id.* § 416.924a(a). The ALJ considers the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* § 416.926a(d)(1).

**C. The ALJ's Decision**

On November 14, 2019, the ALJ concluded that J.L.N. was not disabled within the meaning of the Social Security Act from November 6, 2017. R. at 36. In reaching her decision, the ALJ

applied the three-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 23–36; *see* 20 C.F.R. § 416.924(a). At step one, the ALJ determined that J.L.N. had not engaged in substantial gainful activity since November 6, 2017, the alleged onset date and the date that the application was filed. R. at 26. At step two, the ALJ determined that J.L.N. suffers from the following "severe" impairments: ADHD, combined type, and speech and language delay. *Id.* The ALJ found that these medically determinable impairments result in "more than minimal functional limitations." *Id.* At the third and final step, the ALJ determined that J.L.N. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the listings. *Id.* In reaching this conclusion, the ALJ found that J.L.N. had less than marked limitations in three domains and no limitations in the other three domains. *Id.* at 29–36. Specifically, the ALJ determined that J.L.N had less than marked limitation in (i) acquiring and using information; (ii) attending and completing tasks; and (iii) interacting and relating with others. *Id.* at 29–33. The ALJ determined that J.L.N. had no limitations in (i) moving about and manipulating objects; (ii) caring for himself; and (iii) health and physical well-being. *Id.* at 33–36. The ALJ cited to treatment notes, Plaintiff's testimony, the opinions of state agency reviewers, and reports from J.L.N.'s second grade teacher in support of her findings. *See id.* at 26–29.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that "the evidence preponderates against the Commissioner's findings," the Court must affirm the Commissioner's decision if the decision is supported by substantial evidence.  *See Crawford*, 363 F.3d at 1158–59.  In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied."  *Id.*  However, no "presumption of validity attaches to the [ALJ's] conclusions of law."  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III.   ANALYSIS

Plaintiff argues that the ALJ committed six errors that require remand.  ECF No. [21] at 5–18.  First, Plaintiff argues that the ALJ failed to properly consider and analyze all of the relevant evidence, including the cognitive testing results of Dr. Christian del Rio, Psy.D, which measured a full scale IQ of 53.  *Id.* at 5–9.  Second, Plaintiff argues that the ALJ improperly assigned little weight to the opinion of J.L.N.'s third-grade teacher.  *Id.* at 9–12.  Third, Plaintiff argues that the ALJ's functional assessment of J.L.N. in all six functional domains is not properly supported by

either a treating or examining medical source.  *Id.* at 12–14.  Fourth, Plaintiff argues that the ALJ improperly assigned controlling weight to the reviewing psychologists.  *Id.* at 15–16.  Fifth, Plaintiff argues that the ALJ failed to abide by the applicable standard for judging functional equivalence.  *Id.* at 16.  Sixth, Plaintiff argues that the ALJ's assessment of J.L.N.'s "credibility is not based on any discernible evidence."  *Id.* at 17–18.

As a preliminary matter, the Court notes that Defendant's Motion does not address many of the arguments set forth by Plaintiff.  Rather, Defendant's Motion recites the various standards, with little analysis of Plaintiff's arguments.  ECF No. [22] at 5–7, 10–13.  Defendant does argue, though, that the ALJ's opinion is supported by substantial evidence.  *See id.* at 7, 9–10.  First, Defendant contends that substantial evidence supports the ALJ's finding that J.L.N. had less than marked limitations in his ability to acquire and use information.  *Id.* at 6.  According to Defendant, the ALJ considered the record evidence, including J.L.N.'s IQ and standardized test scores, both normal and abnormal clinical findings, and statements from J.L.N.'s mother and teachers.  *Id.* at 7.  Second, Defendant contends that the ALJ's decision is supported by substantial evidence as to her finding regarding J.L.N.'s ability to attend and complete tasks.  *Id.* at 9.  Specifically, Defendant argues that the ALJ considered the opinions of J.L.N.'s third-grade and music teachers and explicitly rejected them because they were inconsistent with the record evidence, and the ALJ cited to support in the record for her decision.  *Id.* at 9–10.

In the Reply, Plaintiff argues that "Defendant repeatedly asserts issues that have very little to do with Ms. Nottage's actual arguments or the basic legal requirements to which defendant is subjected" and that "[D]efendant fails to adequately address the pertinent legal and factual issues in this case."  ECF No. [24] at 1–2.  Plaintiff maintains that the ALJ's decision is not supported by substantial evidence because she failed to consider the entire record, including J.L.N.'s IQ and

FCAT testing, a speech and language evaluation, and treatment notes concerning J.L.N.'s ability to focus. *Id.* at 4–5. Plaintiff also maintains that the ALJ improperly rejected the opinion of J.L.N.'s third-grade teacher. *Id.* at 5–6. Plaintiff contends that Defendant's "lengthy discussion of the rules pertaining to consideration of medical source opinion evidence [] is largely irrelevant" because the updated regulations do not change the requirement that the ALJ "properly support her findings with appropriate medical source evidence," and Plaintiff's argument is that the ALJ's findings lack support in such medical evidence. *Id.* at 6. Plaintiff argues that the ALJ's reliance on the opinions of the state agency reviewers is insufficient, because those doctors "acknowledge[d] that further consultative examination is necessary" yet the ALJ failed her obligation to order further development of the record. *Id.* at 7. Plaintiff also asserts that the ALJ failed to consider J.L.N.'s standardized testing results across all six domains. *Id.* at 7–8. Finally, Plaintiff maintains that the ALJ failed to adequately explain her credibility finding as to the testimony of J.L.N. and his mother. *Id.* at 8.

## A.   Although An ALJ Can Rely On A Non-Examining Physician to Support Their Functional Assessment, The ALJ's Reliance Here Warrants Remand.

Plaintiff argues that the ALJ "fail[ed] to support her functional assessment with an appropriate medical source statement from either a treating or examining medical source," which is necessary to satisfy the substantial evidence standard. ECF No. [21] at 12. Specifically, Plaintiff argues that the ALJ inappropriately substituted her own medical findings beyond the scope of her expertise and without proper support. *Id.* at 14. Defendant responds that Plaintiff's arguments focus on prior regulations, but that the new and applicable regulations alter how the agency considers medical opinions and prior administrative medical findings. ECF No. [22] at 10–13. Defendant notes that under the new regulations, "the agency 'will not defer or give any specific evidentiary weight, including controlling weight, to *any* medical opinion(s) . . . .'" *Id.* at 11–12

(quoting 20 C.F.R. § 416.920c(a)) (emphasis in original).  Defendant argues that under the new regulations, the ALJ's opinion was supported by substantial evidence.[6]

A child may be found disabled for purposes of SSI if he has a severe impairment or combination of severe impairments that are functionally equivalent to a Listing.  20 C.F.R. § 416.924(d).  To demonstrate functional equivalence of a Listing, the claimant must demonstrate one area of extreme limitation or two areas of marked limitation in the following domains of functioning:

    i.    Acquiring and using information;
    ii.    Attending and completing tasks;
    iii.    Interacting and relating with others;
    iv.    Moving about and manipulating objects;
    v.    Caring for yourself; and
    vi.    Health and physical well being.

*Id.* § 416.926a(a), (b)(1).  Here, the ALJ determined that J.L.N had less than marked limitation in (i) acquiring and using information; (ii) attending and completing tasks; and (iii) interacting and relating with others.  R. at 29–33.  The ALJ also determined that J.L.N. had no limitations in (i) moving about and manipulating objects; (ii) caring for yourself; and (iii) health and physical well-being.  *Id.* at 33–36.

Plaintiff's contention that the ALJ failed to support her functional assessment with an appropriate medical source because she relied on a non-examining physician is simply not the standard.  The regulations provide:

---

[6] Plaintiff also argues that the ALJ failed to "apply the existing evidence across all of the relevant and applicable domains" in her functional assessment and thus fails to comply with SSR 09-1p and SSR 09-8p.  ECF No. [21] at 16.  Plaintiff argues that the ALJ applied an erroneous standard in reaching her functional equivalence findings and cites to policy interpretation rulings concerning the "whole child" approach to the functional equivalence analysis.  *Id.*  Although Defendant does not respond to Plaintiff's argument, the undersigned finds that Plaintiff has failed to sufficiently articulate what error the ALJ committed in this regard, and therefore, must reject the argument.

(i) When we decide whether you have a "marked" or an "extreme" limitation, we will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects. *We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in §§ 416.924a, 416.924b, and 416.929.*

(ii) The medical evidence may include formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents. Standard scores (e.g., percentiles) can be converted to standard deviations. When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a "marked" or "extreme" limitation in a domain.

20 C.F.R. § 416.926a(e)(1) (emphasis added).  Accordingly, the ALJ must look to the record as a whole when evaluating whether or not J.L.N. has a functional limitation.  Although Plaintiff cites to *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003) for the proposition that "a functional assessment cannot be supported. . . by the assessment of a non-examining, reviewing physician," ECF No. [21] at 13, "several courts in this Circuit have rejected *Coleman*."  *Lombana v. Saul*, No. 19-cv-23873, 2020 WL 5633684, at *10 (S.D. Fla. Aug. 20, 2020), *report and recommendation adopted*, No. 19-cv-23873, 2020 WL 5632710 (S.D. Fla. Sept. 18, 2020) (gathering cases).

However, although an ALJ can rely on a non-examining physician, the Court must still turn to whether the ALJ's findings in *this* case, which relied on these non-examining physician opinions, were supported by substantial evidence.  Plaintiff argues that the ALJ erred in developing the record, as an application for social security benefits is not an adversarial process and the ALJ has a "duty to develop a full and fair record."  ECF No. [21] at 5.  Here, Plaintiff cites to the March 2018 assessment from the Behavioral Homestead Clinic wherein Vanessa Briceno, MS Clinician,

recommended a psychiatric evaluation. *Id.* at 9; *see also* R. at 400. Additionally, Plaintiff notes that the ALJ relied on the state agency reviewers' opinions to support her findings, and that both of those opinions found that "further case development . . . is necessary[.]" ECF No. [21] at 14; *see also* R. at 80, 92. Plaintiff argues that the ALJ erred in supporting her findings with the opinions of the state's non-examining physicians. ECF No. [21] at 15–16. Moreover, given these recommendations in the record, Plaintiff argues that the ALJ was required to do more, and could not rely on the record as it was to find that J.L.N. was not disabled. *Id.* at 7. Defendant did not offer any written response to the argument that the state agency opinions noted that additional development was needed, and instead, responded by reciting the legal standard and listing the evidence that was relied upon by the ALJ to argue that the ALJ's opinion is supported by substantial evidence. *See generally* ECF No. [22].

The legal standards at issue are clear. A claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, "[b]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). In fulfilling her duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). "In evaluating the necessity for a remand, [courts] are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted). Such gaps exist when omitted medical records are

relevant to the applicant's claim of disability and the missing evidence might sustain the contention of an inability to work. *See id.* at 935–36.

Here, the ALJ found the opinions of two state agency reviewers to be "persuasive" and relied on those opinions in finding that J.L.N. was not disabled. *See* R. at 29. The first opinion is dated January of 2018 (the "January Agency Opinion"), *id.* at 77–85, and the second opinion was on reconsideration and is dated July of 2018 (the "July Agency Opinion"), *id.* at 88–98 (together, the "Agency Opinions"). The consultative examination relied upon in the January Agency Opinion was performed by Dr. del Rio in December 2017, and found that J.L.N. had a severely low IQ and also found that the test was reliable. The consultative examination relied upon in the July Agency Opinion was performed at Homestead Hospital Physical and Speech Therapy in June 2018, and found that J.L.N.'s total language score was below average. However, as Plaintiff noted, both of the Agency Opinions include notations that "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim[,]" and further indicated that a "[s]pecific exam [was] needed" as J.L.N. "ha[d] no medical source to perform the [consultative examinations]." *id.* at 80 (evaluation of Charity Holloman dated January 24, 2018); *id.* at 92 (evaluation of Fredline Sylvain dated July 10, 2018). The ALJ does not acknowledge these notations regarding the insufficiency of the evidence in her opinion.

The Parties dispute the proper interpretation of the language in the Agency Opinions that noted that the evidence was insufficient. Plaintiff argues that the proper reading is that the state agency reviewers found that the record before them was insufficient to render a decision, even though each of the opinions ultimately included a finding that J.L.N. was not disabled. Accordingly, Plaintiff contends that the ALJ's decision is not supported by substantial evidence,

because the ALJ relies on the Agency Opinions, and those evaluations both note that there was a lack of evidence to render an informed decision.

Because the Government did not respond to this argument in Defendant's Motion, the Court set the matter for Oral Argument, specifically requesting that counsel be prepared to address this issue.  During Oral Argument, the Government acknowledged that the language at issue is ambiguous and conceded that all parts of the Agency Opinions should be read contemporaneously—a reading which would render Plaintiff's interpretation accurate.  However, the Government proffered an alternative interpretation: that the notations in the Agency Opinions stating that the record was insufficient are actually an explanation as to *why* an agency examination was ordered.  In other words, the state agency reviewers were not finding that the record was insufficient, but rather they were commenting on the record as it stood before they were asked to conduct their assessment.  Therefore, it was because the record was insufficient that consultative examinations were ordered, and thereafter considered by the state agency reviewers in rendering their Agency Opinions.  Specifically, the Government noted that the two Agency Opinions relied on consultative examinations that were rendered shortly before the Agency Opinions were finalized.  In short, the parts of the Agency Opinions that note the insufficiency of the evidence were comments on the record *before* the examinations that were then considered *as part of* the state agency consultative process.  The undersigned addresses these two possible readings.

If the undersigned accepts Plaintiff's reading of the Agency Opinions, remand is warranted. Indeed, under Plaintiff's reading, the ALJ's finding is not supported by substantial evidence because the very opinions that the ALJ relies on note that further evaluation was necessary to make a determination.  *See Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted). Specifically, the ALJ relied on the Agency Opinions in finding that J.L.N. was not disabled.  *See*

R. at 29.  Under Plaintiff's reading, the Agency Opinions indicate that further development of the record was necessary because there was insufficient information to support a decision on the claim. The ALJ does not acknowledge this evidentiary gap in her findings.  It "is clear that an ALJ is required to order additional medical tests when a claimant's medical sources do not provide enough evidence about an impairment to allow the ALJ to determine disability[,]" which includes instances where the medical opinions relied upon indicate further need for evaluation.  *See Guerrier on behalf of L.C. v. Saul*, No. 18-cv-63090, 2020 WL 1034371, at *7 (S.D. Fla. Feb. 14, 2020), *report and recommendation adopted sub nom. Guerrier on behalf of L.C. v. Acting Comm'r of Soc. Sec.*, No. 18-cv-63090, 2020 WL 1033405 (S.D. Fla. Mar. 2, 2020); *Howell v. Saul*, No. 18-cv-81494, 2020 WL 869733, at *6 (S.D. Fla. Feb. 21, 2020) (remanding where doctor opined that the plaintiff should undergo a psychiatric evaluation, and the ALJ did not request one). Although the Government is correct that the ALJ does not have to accept a recommendation that further testing is required, the ALJ does not address these recommendations.  Coupled with the other recommendations for further testing in the record, remand would be warranted if Plaintiff's reading is accepted.

However, the undersigned considers the Government's interpretation of the Agency Opinions and finds that although the Government failed to make the argument in its written submission, the interpretation offered at the Oral Argument is a more persuasive reading of the Agency Opinions.  In particular, the dates of the consultative examinations persuade the Court that the Government offers the better reading, that the notations in the Agency Opinions are a comment on the state of the record that prompted the review, which culminated in the Agency Opinions themselves.  However, this conclusion does not end the analysis.

Indeed, even accepting the Commissioner's interpretation as articulated at the Oral Argument, remand is warranted. If the notation in the Agency Opinions as to the inadequacy in the record is read as a comment on the status of the record before that particular Agency Opinion was submitted, the July Agency Opinion's notation as to the record must be read as a comment on the inadequacy of the record before that date. Specifically, the July Agency Opinion's note regarding the sufficiency of the evidence must be read as finding that the January Agency Opinion was not based on sufficient evidence. Indeed, it would appear that the July 2018 state agency review was ordered *because* the January 2018 review was not based on sufficient evidence. The ALJ's opinion makes no mention of this. That being the case, the ALJ's reliance on the January Agency Opinion as "persuasive," without any indication as to how the July Agency Opinion impacted its findings, should not be accepted. In short, both Agency Opinions cannot be "persuasive" given that the later report would have to be read as being necessary *because* the first report was not based on sufficient evidence. Of course, the evidence that the January Agency Opinion relied on together with the consultative examination ordered for the July 2018 review could be sufficient, but that is a determination that was not made in the ALJ's opinion, as the opinion did not review any of these issues.

Moreover, even if the Court were to disregard the ALJ's finding as to the January Agency Opinion and only consider the ALJ's reliance on the July Agency Opinion, the ALJ's opinion would not be supported by substantial evidence. In finding that the Agency Opinions were "persuasive," the ALJ simply cites to the opinions themselves and the reports each reviewed, without any analysis as to *why* the opinions are persuasive. Moreover, focusing on the July Agency Opinion alone, the only citation to support the ALJ's finding as to that Agency Opinion is a notation to the 2018 Homestead Hospital Physical and Speech Therapy speech evaluation which

found that J.L.N. was below average, and yet, the ALJ cites only to that report's finding that J.L.N. "was able to understand personal possession pronouns, superlative forms, adverbs, and inference." R. at 29.  To be sure, the ALJ, on remand, may be able to support a conclusion that the July Agency Opinion is persuasive even on this record.  However, the ALJ in *this* opinion did not do so, and the failure to articulate a basis for finding that the Agency Opinions are persuasive warrants remand given that they underly the ALJ's finding that J.L.N. was not disabled.

### B.      The ALJ Failed To Adequately Address Plaintiff's IQ.

Plaintiff argues that the ALJ erred in her consideration of other medical and non-medical evidence.  Plaintiff argues that the ALJ did not consider all of the relevant evidence, but rather selectively considered certain evidence and "inappropriately substitute[d] her understanding of the medical data."  ECF No. [21] at 5–9.  Specifically, Plaintiff contends that the ALJ failed to consider the cognitive testing results of Dr. del Rio, including J.L.N.'s IQ score, which are supported by other evidence in the record.  *Id.* at 6–7.  In addition, given the IQ scores, Plaintiff contends that the ALJ committed reversible error in failing to consider whether Plaintiff met, medically equaled, or functionally equaled Listing 112.05 (intellectual disorder).  *Id.* at 7; ECF No. [24] at 2.  In Defendant's Motion, Defendant argues that the ALJ adequately considered Plaintiff's IQ score but does not respond to Plaintiff's argument concerning Listing 112.05.  *See* ECF No. [22] at 7.

A child may satisfy the requirements for Listing 112.05 by showing "significantly subaverage general intellectual functioning and significant deficits in current adaptive functioning. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning."  20 C.F.R. Pt. 404, Subpt. P., App. 1.  Moreover:

> Listing 112.05(B) is satisfied by meeting both of the following criteria:

    1.  Significantly  subaverage  general  intellectual  functioning evidenced by a or b:

    a.  A  full  scale  (or  comparable)  IQ  score  of  70  or  below  on  an individually administered standardized test of general intelligence; or

    b.  A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

    2.  Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 112.00E1); or

    b. Interact with others (see 112.00E2); or

    c. Concentrate, persist, or maintain pace (see 112.00E3); or

    d. Adapt or manage oneself (see 112.00E4).

*Scarbrough o/b/o J.J.S. v. Saul*, No. 18-cv-00516, 2019 WL 5839298, at *8 (S.D. Ala. Nov. 7, 2019) (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 112.05(B)).  However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."  *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773 (11th Cir. 2015) (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)); *see also Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001)).

    Here, the ALJ does not discuss Listing 112.05 in her decision, nor does it appear that an implicit finding was made.  Courts within the Eleventh Circuit have found an ALJ's failure to consider the intellectual disability listing where a claimant's IQ satisfies the criteria to be error warranting remand.  *See, e.g., Castro v. Berryhill*, No. 15-cv-1396, 2017 WL 1050074, at *4 (M.D. Fla. Mar. 20, 2017) ("Here, the record evidence shows that Plaintiff had a verbal comprehension

IQ of 63 and a processing speed IQ of 68" and "a physical or other mental impairment[ but d]espite

this evidence, the ALJ erred in failing to even discuss listing 12.05 in the decision . . . .").[7]   At the

Oral Argument, the Commissioner argued that the ALJ had no obligation to review Listing 112.05,

given that J.L.N. was diagnosed with ADHD and not an intellectual disability.   Even accepting the

argument that the ALJ did not have to consider Listing 112.05, the ALJ failed to assess the IQ

score in her findings.

In the ALJ's opinion, the only mention of the IQ is the acknowledgment that J.L.N.'s IQ

score "fell in the extremely low range of functioning."  R. at 30.  However, the ALJ did not make

any finding as to whether she credited the IQ score.  Instead, the ALJ simply cites to the IQ and

then to other record evidence that does not address the issue of Plaintiff's low IQ.   *See id*.

Specifically, referring to the IQ score, the ALJ states: "[h]owever, the claimant's second grade

teacher observed no more than obvious problems in this area.  The claimant's mother reported that

the claimant could use sentences with 'because,' 'what if,' or [']should have been.'  He talked with

friends and family.  The claimant could print letters and his name." *Id.*  While the ALJ seemingly

---

[7] Moreover, the ALJ's failure to explain what consideration she was giving J.L.N.'s IQ is notable given that "it was the only acceptable psychological source in the record to address Plaintiff's mental impairments."  *See McClendon v. Comm'r of Soc. Sec.*, No. 14-cv-01651, 2015 WL 4605759, at *8 (M.D. Fla. July 30, 2015).  Indeed, the ALJ did not cite to a contrary IQ score or other medical evaluations of J.L.N. as contradictory evidence in the record.  Such a "brief reference to the results of" J.L.N.'s IQ test without "provid[ing] any sort of analysis comparing the scores to contradictory evidence of h[is] daily activities" requires remand because "[t]he ALJ is required to address the validity of an IQ score that he intends to discount."  *Roberts v. Astrue*, No. 11-cv-00154, 2012 WL 4897443, at *5 (S.D. Ga. Sept. 20, 2012), *report and recommendation adopted*, No. 11-cv-00154, 2012 WL 4894492 (S.D. Ga. Oct. 15, 2012).  *Cf. Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) ("We conclude that—though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05—substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled.");  *Brownlee v. Colvin*, No. 14-cv-21286, 2015 WL 12516638, at *2 (S.D. Fla. June 11, 2015) (finding "substantial evidence supports the ALJ's implicit conclusion Brownlee did not meet Listing 112.05(D)").

sought to distinguish certain evidence in the record from the IQ score, the ALJ's opinion is not clear as to whether she credits the IQ score. Nor can the undersigned conclude that the IQ score is inconsistent with the comments of J.L.N.'s teachers.

At the Oral Argument, the Commissioner argued that the ALJ implicitly rejected the IQ score because the two Agency Opinions appear to have found the IQ score invalid. Specifically, the Commissioner argued that the line in the Agency Opinions that states, "FSIQ/53, invalid secondary to minimally cooperative, distracted, motor activity elevated" means that the IQ was invalid. R. at 82, 93. That does not appear evident from the undersigned's reading of the Agency Opinions, nor does the ALJ make any mention of this in her Opinion. Nevertheless, even if the Court were to agree with the Commissioner's reading that the IQ was invalid per the Agency Opinions, the ALJ never makes that finding. The Commissioner's position at Oral Argument requires the undersigned to make various inferences and draw conclusion that the ALJ never made, and the Court "may not supply a reasoned basis for [an] agency's action that the agency itself has not given." *Dixon v. Astrue*, 312 F. App'x 226, 229 (11th Cir. 2009) (citation omitted). Moreover, although the Government argues that the Agency Opinions discount the IQ score as invalid, Dr. del Rio, who performed the IQ test, noted that "[t]he scores obtained appear to be a valid estimate of the claimant's current functioning." R. at 394. Thus, the ALJ's failure to adequately discuss the IQ score, without crediting or discrediting the results, and without discussing the Agency Opinions' discrediting of the IQ score, is not supported by substantial evidence. Accordingly, remand is required.[8]

---

[8] Finally, Plaintiff makes two other arguments that should be noted. Plaintiff argues that the ALJ erred by affording little weight to the opinions of J.L.N.'s third-grade teacher, ECF No. [21] at 9–12, by discrediting the testimony of J.L.N. and Plaintiff, without articulating her reasons for doing so. *Id.* at 17. To the extent that Plaintiff is challenging the language that the ALJ used in making those findings, the Court finds that the ALJ provided sufficient articulation. However, given that

## IV.     RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [21], be **GRANTED**, and Defendant's Motion, ECF No. [22], be **DENIED**.

## V.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **SEVEN DAYS** of being served with a copy of this Report and Recommendation.  Any response to another party's objections must be filed within **THREE** days after being served with a copy thereof.  Any request for an extension of these deadlines must be made within **THREE** calendar days from being served with the Report and Recommendation.  A shortened time period is appropriate, as the Parties were given ample time to argue their positions at the Oral Argument.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on August 29, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**

---

these findings were also based on the ALJ's reliance on the Agency Opinions, these findings must also be reviewed on remand.